UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH REICHARD,

     Plaintiff,                          Case No. 13-cv-13685
                                            Hon. Matthew F. Leitman

v.

OAKWOOD HEALTHCARE,
INC.,

     Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #18)

Plaintiff Deborah Reichard ("Reichard") worked as a registered cardiac sonographer for Defendant Oakwood Healthcare, Inc. ("Oakwood"). Beginning in 2010, Oakwood took a series of disciplinary actions against Reichard that it attributed to Reichard's alleged failure to comply with certain policies and procedures. Oakwood ultimately terminated Reichard in April 2012. Reichard then filed this action, alleging that Oakwood (1) interfered with her rights pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and (2) retaliated against her for taking FMLA leave. (*See* the "Complaint," ECF #1.) Oakwood has now moved for summary judgment. (*See* the "Motion," ECF #18.) For the reasons explained below, the Court **GRANTS** Oakwood's Motion.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**1. Reichard's Employment at Oakwood**

Oakwood hired Reichard as a cardiodiagnostic technician in 1983 and promoted her to registered cardiac sonographer in 1995. (*See* Reichard Deposition, ECF #18-2 at 27-29, Pg. ID 125.) Reichard was an "excellent" clinician. (Deposition of Anna Hollis, ECF #18-3 at 51, Pg. ID 153.) However, Reichard was "difficult … [and] discourteous at times," and she occasionally got into trouble with her supervisors. (*Id.* at 11, Pg. ID 146. *See also* Deposition of Robert James, ECF #18-8 at 29, 85; Pg. ID 200, 202.)

**2. Reichard's Intermittent FMLA Leaves of Absence and Oakwood's FMLA Reporting Policy**

During Reichard's employment, Oakwood granted Reichard two FMLA leaves of absence. (*See* Reichard Dep. at 58-63, Pg. ID 130-31.) These leaves of absence permitted Reichard to take unpaid, job-protected leave (1) due to Reichard's severe allergies, and (2) to care for her ailing mother. (*See id.*) Oakwood permitted Reichard to use the FMLA leaves of absence intermittently. For instance, if Reichard needed to arrive late to work due to her allergies or in order to care for her mother, she was permitted to do so. (*See id.* at 60, Pg. ID 130.)

2

According to Oakwood's attendance records, Reichard used FMLA leave regularly throughout 2011. (*See, e.g.*, the "Attendance Log," ECF #18-16.) In fact, Reichard testified that she "needed [FMLA leave] every day." (Reichard Dep. at 88, Pg. ID 136.)

Under the Cardiology Department's FMLA reporting policy, if Reichard was going to be absent or tardy for an FMLA-related reason, Reichard was required to call her manager at least two hours prior to the scheduled start of her shift. (*See id.* at 70, Pg. ID 132.) In addition, Reichard was required to report her use of FMLA leave to both her manager and Human Resources after she used the leave. (*See id.* at 72, Pg. ID 132. *See also* Deposition of Anna Hollis at 42, Pg. ID 150.)

### 3. Oakwood's Disciplinary System; Reichard's Corrective Actions; and Reichard's Eventual Termination

Oakwood had a progressive, five-step disciplinary process for most workplace infractions:

> Step 1: Verbal Counseling
> Step 2: Written Warning #1
> Step 3: Written Warning #2
> Step 4: Suspension
> Step 5: Termination

(*See* the "Employee Work Rules," ECF #18-4.) Under this system, Oakwood terminated an employee if the employee accumulated five corrective actions within a two-year period. (*See id.* at 4, Pg. ID 162.)

3

Between 1983 and 2010, Reichard received multiple corrective actions for tardiness and behavioral issues.  (*See* ECF #18-5 and #18-6.)  In or around 2010, Anna Hollis ("Hollis") became Reichard's supervisor.  (*See* Hollis Dep. at 8, 11; Pg. ID 145-46.)  When Hollis took over Reichard's department, Hollis "clean[ed] the slate" of each employee's prior corrective actions.  (*Id.* at 11, Pg. ID 146.) Thus, Reichard "start[ed] fresh" with no disciplinary record under Hollis.  (*Id.*)

Nonetheless, Reichard soon began accumulating new corrective actions under Hollis.   In June 2010, Hollis issued Reichard a Verbal Counseling for "rude/negative behavior" relating to a "discourteous" voice mail message.  (The "Verbal Counseling," ECF #18-10.)   Approximately one year later, Reichard received a Written Warning #1 for failure to comply with multiple "verbal instructions to not leave food on [her] desk."  (The "Written Warning #1," ECF #18-11.)

On November 2, 2011, Hollis issued Reichard a Written Warning #2 for "excessive tardies."  (The "Written Warning #2," ECF #18-12.)  The corrective action form stated as follows:

> Employee has been tardy multiple times without notifying work (manager or secretary)
>
> Employee has reported FMLA time to H[uman] R[esources] but did not report FMLA to manager
>
> Employee has stayed late multiple times without manager approval to do so

4

(*Id.*)  Hollis attached records purporting to show Reichard's use of FMLA leave for the previous month.  (*See id.* at 4-5, Pg. ID 216-17.)

Approximately three months later, Hollis suspended Reichard because she "fail[ed] to report FMLA time daily and correctly" and because she continued to "stay[] late without authorization." (The "Suspension," ECF #18-20.)  Hollis noted that Reichard "misreported" her FMLA leave on 12 days in the previous month. Hollis stated that Reichard "did not submit actual time used for FMLA, and failed to report a number of days for FMLA on the days she called in to manager with FMLA."  (*Id.*)  Moreover, the Cardiology Department's attendance policies did not allow Hollis to stay past the end of her shift in order to "make up" for being late. (*See* Hollis Dep. at 47, Pg. ID 152.  *See also* Deposition of Robert James at 25, Pg. ID 199.)  Reichard had previously been warned not to stay late without permission. (*See* Reichard Dep. at 82, Pg. ID 135.)

Reichard challenged the Suspension through Oakwood's appeals process. (*See* the "Suspension Appeal," ECF #18-23 at 2, Pg. ID 495.)  She argued that she did report her FMLA time correctly and that she did not stay late in violation of any policy or directive.  (*See id.* at 4, Pg. ID 497.)  Oakwood's Director of Surgical Services & Outpatient Services, Aaron Bontranger ("Bontranger"), conducted an investigation in connection with Riechard's appeal and concluded that Reichard did fail to obtain the proper authorization to stay late and did fail to properly record

5

her FMLA time. (*See id.*) Thus, Bontranger upheld Reichard's suspension. (*See id.*)

Oakwood Human Resources Director Robert James ("James") then conducted an additional analysis of the issues raised in Reichard's appeal. (*See id.* at 5-6, Pg. ID 498-99.) Like Bontranger, James concluded that Reichard violated the policies and directives requiring her to obtain prior authorization to stay beyond the end of her scheduled shift and that she had failed to report her FMLA leave for January 10-15, 2012, to Human Resources. (*See id.*) As a result, James concluded that "the [S]uspension cannot be overturned." (*Id.* at 6, Pg. ID 499.)

Finally, Hollis terminated Reichard on April 6, 2012, for "unacceptable job performance." (*See* the "Termination," ECF #18-25.) Hollis cited two specific incidents that led to the Termination. First, Hollis referenced an incident that occurred on March 6, 2012 (the "March 6th Incident"). According to the written statement of Oakwood employee Chris Williams ("Williams") (attached to the corrective action notice), on that date, an Oakwood physician approached Reichard in a patient's room and asked whether Reichard was there to perform an echo test. (*See* "Williams' Statement," ECF #18-25 at 4-5, Pg. ID 508-09.) Reichard responded, "Unfortunately." (*Id.*) Williams stated that the patient overheard Reichard's response. (*Id.*)

6

Hollis also cited a patient complaint regarding Reichard's conduct on March 14, 2012 (the "March 14th Incident"). The patient complained that Reichard "was unprofessional, music was loud in the department, she was on her cell phone at [her] desk with [a] personal call [for] approximately 15 minutes and appeared to be online and it did not appear to be business related." (Termination.) Hollis also noted that the patient complained of food "scattered everywhere" on Reichard's desk. (*Id.*)

Reichard appealed the Termination. (*See* the "Termination Appeal," ECF #18-26 at 2, Pg. ID 511.) Bontrager conducted an investigation and met with Reichard on May 29, 2012. (*See* the "Bontrager Response," ECF #18-26 at 4-5, Pg. ID 513-14.) Bontrager noted, among other things, that Reichard admitted to using her personal cell phone at her desk for nonbusiness purposes, but that Reichard insisted that the call was no more than 4 minutes in duration. (*See id.*) Bontrager further noted that "Oakwood Health System Corrective Action work rule #013 specifically states the use of personal cell phone and pagers in the workplace during scheduled work hours is prohibited, no matter the length of time used." (*Id.*) Bontrager concluded that "[b]ased on the investigation and the validation of the patient complaint and the employee acknowledging the violation of minor work rule #013, termination [is] upheld." (*Id.*)

James conducted a separate investigation into the Termination. (*See* the "James Response," ECF #18-26 at 6-8, Pg. ID 515-17.) James noted that "two witnesses reported" overhearing the March 6th Incident and that the patient "became upset, concerned, and her feelings were hurt" as a result of Reichard's comment. (*Id.* at 7, Pg. ID 516.) James also noted that Hollis spoke directly with the patient who initially complained about the March 14th Incident, and that the patient "reiterated the [complaint] to her." (*Id.*) James concluded that "[t]he termination will be upheld." (*Id.*)

Reichard then filed this action, alleging that Oakwood interfered with her FMLA rights and retaliated against her for using FMLA leave. (Compl. at ¶¶16-29.) In her Complaint, Reichard acknowledged that Oakwood granted her intermittent FMLA leaves of absence. (*See id.* at ¶20.) Reichard alleged, however, that Oakwood "failed and/or refused to restore her to the position she held at the time her [FMLA] leave commenced." (*Id.* at ¶24.) Reichard also alleged that she "complained to Oakwood that it had violated her FMLA rights by taking disciplinary action against her" and that "[i]n retaliation, Oakwood terminated her employment." (*Id.* at ¶¶27-28.)

Oakwood has now moved for summary judgment. The Court heard oral argument on Oakwood's Motion on March 31, 2015. For the reasons explained below, the Court **GRANTS** Oakwood's Motion.

8

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

### 1.  Legal Framework Governing Reichard's FMLA Claims

The FMLA entitles an eligible employee to twelve weeks of leave annually if the employee is unable to work due to a serious health condition or in order to care for a spouse, child, or parent who has a serious health condition. *See* 29 U.S.C. § 2612(a)(1). An employee may take FMLA leave intermittently if

medically necessary. *See id.* at § 2612(b)(1). The FMLA prohibits an employer from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of" an employee's FMLA rights. *Id.* at § 2615(a)(1). Nor may an employer retaliate against an employee who uses FMLA leave. *See id.* at § 2615(a)(2). *See also Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 400-01 (6th Cir. 2008). Reichard alleges that Oakwood both interfered with her FMLA rights and retaliated against her for using FMLA leave.

The United States Court of Appeals for the Sixth Circuit analyzes FMLA interference and retaliation claims under the *McDonnell Douglas* burden-shifting framework. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Under this framework, "the employee has the initial burden of establishing [her] prima facie case; if [s]he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 427 (6th Cir. 2014).

## 2. The Court Assumes, Without Deciding, That Reichard Has Established a Prima Facie Case of Interference and Retaliation

In order to establish a prima facie case of FMLA retaliation, Reichard must show that (1) she engaged in FMLA-protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse

employment action and the protected activity.  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).  To establish a prima facie case of FMLA interference, Reichard must show that (1) she is an "eligible employee" under the FMLA; (2) Oakwood is an "employer" under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Oakwood notice of her intention to take leave; and (5) Oakwood denied her FMLA benefits to which she was entitled or "somehow used [her FMLA] leave against her and in an unlawful manner, as provided in either the statute or regulations."  *Wysong v. Dow Chem.*, 503 F.3d 441, 447 (6th Cir. 2007).  The "threshold showing that a FMLA plaintiff must make to survive the prima facie stage of proof" is "low."  *Bryson*, 498 F.3d at 571.

As to Reichard's retaliation claim, the parties do not dispute that Reichard engaged in FMLA-protected activity (i.e., her use of FMLA leave).  The parties also agree that Written Warning #2, the Suspension, and the Termination (collectively, the "Allegedly-Discriminatory Actions") each constitutes an adverse employment action.[1]  But the parties dispute whether Reichard has established the causation element of her prima facie case.  Reichard contends that a reasonable factfinder could infer a causal connection between the Allegedly-Discriminatory

---

[1] Oakwood concedes, for the purposes of this Motion, that the Written Warning #2 was an adverse employment action, and it does dispute that the Suspension and Termination were adverse employment actions.  (*See* Mot. at 17, Pg. ID 112.).  Reichard does not contend that either the Verbal Counseling or Written Warning #1 were in retaliation for, or interfered with, her use of FMLA leave.  (*See* Reichard Dep. at 77, 79-80, Pg. ID 133-34.)

Actions and her use of FMLA leave because (1) "it was very inconvenient" for Oakwood that she "needed [leave] every day" and (2) a co-worker "would comment … negatively" about Reichard's use of FMLA leave.   (Reichard Dep. at 88, 152; Pg. ID 136, 142.)   There is also some temporal proximity between Reichard's taking of leave and the Allegedly-Discriminatory Actions.[2]   (*See, e.g.*, Attendance Log (showing Reichard's use of FMLA leave in the period preceding the Allegedly-Discriminatory Actions).   *See also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) (temporal proximity may suffice to establish causation element of prima facie FMLA retaliation claim).)   Oakwood insists that this evidence does not demonstrate a causal connection between Reichard's use of FMLA leave and its disciplinary actions.

Oakwood also argues that Reichard has not established a prima facie case of FMLA interference.   Oakwood maintains that (1) it granted Reichard FMLA leave every time that Reichard requested such leave, and (2) Reichard therefore cannot show that Oakwood denied her FMLA benefits to which she was entitled.[3]

---

[2]  The evidence of causation based on temporal proximity is weak, however, given that Reichard had been using FMLA leave for many years without suffering any alleged discrimination.

[3]  Reichard said that in one instance Oakwood denied her request for "one day" of FMLA leave, but she testified that she could not "remember the circumstances" or the date of that instance.  (*See id.* at 64, Pg. ID 131.)   She did not contend in her briefs or at the hearing before the Court that her interference claim is based upon the instance that she cannot recall with any clarity.

Oakwood argues that under these circumstances, Reichard's claim could only be for retaliation, not interference. (Reply Br., ECF #23 at 4, Pg. ID 627 (citing *Seeger*, 681 F.3d at 282, and *Wallner v. J.J.B. Hilliard, et. al.*, 590 Fed. Appx. 546 (6th Cir. 2014)).)  However, the cases on which Oakwood relies did not involve a plaintiff, like Reichard, who regularly used intermittent FMLA leave, had additional FMLA leave remaining, and planned to use it.  Rather, those cases involved plaintiffs who suffered adverse actions after *completing* all of the FMLA leave to which they were entitled.  The Sixth Circuit's decision in *Wysong*, *supra*, suggests that Reichard's allegations may state a prima facie case of interference. *See Wysong*, 503 F.3d at 446-47 (FMLA interference claim "includes retaliatory discharge for taking leave") (internal citations omitted).

It is not crystal clear that Reichard has surpassed the "low" threshold for establishing a prima facie case of FMLA retaliation and interference.  Nonetheless, the Court declines to decide the Motion on this ground, as application of the remaining steps in the *McDonnell Douglas* analysis clearly establish that Oakwood is entitled to summary judgment.  Accordingly, the Court will assume, without deciding, that Reichard has demonstrated a prima facie case of FMLA retaliation and interference.

13

### 3. Oakwood Has Identified Legitimate, Non-Discriminatory Reasons for Each Adverse Employment Action Against Reichard

Oakwood has satisfied its burden to show that it had a legitimate, non-discriminatory reason for each Allegedly-Discriminatory Action. Specifically, Oakwood asserts that each Allegedly-Discriminatory Action was motivated by Reichard's violations of Oakwood's policies and procedures. For instance, Oakwood states that it issued the Written Warning #2 because Reichard (1) was tardy multiple times without notice, in violation of Oakwood's attendance policy and the FMLA Reporting Policy; (2) reported her use of FMLA leave to Human Resources but failed to report her leave to Hollis, as required by the FMLA Reporting Policy; and (3) stayed late multiple times without Hollis' approval, despite express instructions not to do so. Likewise, Oakwood asserts that it issued the Suspension because Reichard (1) failed to report her FMLA leave for certain days in January 2012 to Human Resources, as required by the FMLA Reporting Policy; and (2) continued to stay late without Hollis' authorization. Finally, Oakwood asserts that it terminated Reichard for "unacceptable job performance" related to the March 6th and March 14th Incidents. Reichard's alleged violations of Oakwood's policies and procedures are legitimate, non-discriminatory reasons for the Allegedly-Discriminatory Actions. *See, e.g.*, *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (citing *Sybrandt v. Home Depot, USA, Inc.*, 560 F.3d 553, 556 (6th Cir. 2009)) (purported violation of employer's code of

14

conduct is a "facially legitimate, nondiscriminatory reason" for adverse employment action). Accordingly, the burden shifts back to Reichard to rebut Oakwood's proffered reasons by showing them to be pretextual

### 4. Reichard Has Not Shown that Oakwood's Proffered Reasons Were Pretextual

Reichard may demonstrate that Oakwood's proffered reasons were pretextual by establishing that the reasons "(1) have no basis in fact; (2) did not actually motivate the action[s]; or (3) were insufficient to warrant the action[s]." *Demyanovich*, 747 F.3d at 431. Reichard attempts to show pretext by arguing that Oakwood's proffered reasons have no basis in fact. (*See* Response Br., ECF #21 at 14-18, Pg. ID 535-39.)

Oakwood counters that its proffered reasons *do* have a basis in fact. Oakwood argues, in the alternative, that even if its proffered reasons were factually inaccurate, it is still entitled to summary judgment based on the "honest belief" doctrine. Under that doctrine, "[i]f the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009). The honest belief doctrine "does not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith v. Chrysler*, 155 F.3d

15

799, 807 (6th Cir. 2001).  Rather, "[t]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559 (6th Cir. 2009) (internal quotation marks omitted).  If an employer produces evidence that it honestly believed its proffered reasons and made a reasonably informed and considered decision, "[t]hereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held."  *Seeger*, 681 F.3d at 285. The Sixth Circuit has applied the honest belief doctrine in actions involving both FMLA retaliation and interference claims.  *See, e.g.*, *Allen v. Wal-Mart Stores, Inc.*, --- Fed. App'x ---, 2015 WL 1002975, at *4 (6th Cir. 2015) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (FMLA interference); *Seeger*, 681 F.3d at 285 (FMLA retaliation).

The Court concludes that Reichard has failed to show that the majority of Oakwood's proffered reasons for the Allegedly-Discriminatory Actions lacked a basis in fact.  Even where Reichard has arguably demonstrated that the accuracy of Oakland's proffered reasons is open for dispute, she has failed to rebut Oakwood's showing that it honestly believed its reasons and made a reasonably informed and considered decision.   Accordingly, Reichard has not established pretext, and Oakwood is entitled to summary judgment.

16

### A. Written Warning #2

As described above, Oakwood issued Written Warning #2 primarily because Reichard failed to properly notify her department before arriving late.  Reichard says that there is no factual basis for the allegation that she failed to call.  She points to her deposition testimony that she *always* complied with Oakwood's attendance policy by calling Hollis or someone else in the Cardiology Department approximately two hours before the scheduled start of her shift whenever she was going to be late.  (*See* Reichard Dep. at 80-81, Pg. ID 134.)  Reichard unequivocally testified that she "was n[ever] tardy without notifying anyone" and "[t]here was never a day that the hospital … was not informed of [her] situation." (*Id.* at 75, 80; Pg. ID 133-34.)  Standing alone, this testimony would be sufficient to create a genuine issue as to whether the first reason Oakwood gave for Written Warning #2 had a basis in fact.

However, Reichard's testimony did not stop there.  Instead, Reichard went on to testify that her "phone records will prove that [she] called every time."  (*Id. See also id.* at 75, Pg. ID 133 ("I have the phone records to prove it").)  Oakwood acquired Reichard's phone records through discovery and attached the records to its Motion.  (*See* ECF #18-13, #18-14.)  These phone records – which, according to Reichard, reflect every phone call she made to Hollis or the Cardiology Department to report a late arrival (*see* Reichard Dep. at 96, Pg. ID 138) –

17

contradict Reichard's testimony that she timely informed Hollis (or someone else in the Cardiology Department) every time she was tardy.  Reichard's attendance records indicate that in the month leading up to Written Warning #2, Reichard was tardy on at least 16 days.  (*See* Attendance Log; *see also* ECF #18-18.)  However, Reichard's phone records demonstrate that on seven of those days (October 4, 10, 11, 12, 13, 20, and 27), Reichard made *no* phone calls in the hours leading up to her shift.  (*See* ECF #18-13 at 116-134, Pg. ID 333-51; ECF #18-14 at 3-6, Pg. ID 434-37.)  Thus, the very phone records that Reichard invoked to support her assertion that she called every time she was tardy unequivocally disprove her testimony.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Reichard's testimony is so "blatantly contradicted" by her phone records that no reasonable jury could credit it. *See Harwe v. Floyd*, 545 Fed. App'x 20, 22 (2d Cir. 2013) (declining to adopt plaintiff's testimony on summary judgment where testimony was "conclusively" contradicted by plaintiff's phone records).  For purposes of summary judgment, therefore, the Court cannot adopt – and attaches no weight to – Reichard's testimony that she always complied with Oakwood's attendance

18

policies.  Reichard thus has failed to show that Oakwood's primary justification for Written Warning #2 –her failure to notify work before arriving late – lacked a factual basis.

### B. The Suspension

As discussed above, Oakwood asserts that it suspended Reichard because she (1) failed to report her FMLA leave for certain days in January 2012 to Human Resources and (2) continued to stay late without Hollis' authorization.  Reichard testified, however, that she submitted all required FMLA paperwork to Human Resources and never stayed past the end of her shift when not permitted to do so. (*See* Reichard Dep. at 92, 97; Pg. ID 137-38.)  Taking this evidence in the light most favorable to Reichard, she has at least arguably shown a material dispute over whether Oakwood's proffered reasons for the Suspension had a basis in fact.

Nevertheless, Oakwood is still entitled to summary judgment because it has established that it honestly believed its proffered reasons and made a reasonably informed and considered decision.  Indeed, Hollis attached Reichard's timecard to the Suspension, with handwritten notes of all the days on which she believed that Reichard stayed late without permission. (*See* ECF #18-20 at 5, Pg. ID 487.)  Moreover, James met with Reichard and Hollis in connection with his audit into Reichard's FMLA usage.   James investigated Reichard's FMLA records and determined that she had not presented FMLA requests to Human Resources for the

19

week of January 10-15, 2012.  Thus, Oakwood has presented evidence that it made a reasonably informed and considered decision before suspending Reichard and that it honestly believed its proffered justifications. [4]

Reichard has not identified any evidence that Hollis' and James' investigations were in any way procedurally deficient, or that Oakwood did not honestly believe its proffered reasons.  Thus, she cannot defeat Oakwood's invocation of the "honest belief" doctrine with respect to the Suspension. *Seeger*, 681 F.3d at 285 (rejecting employee's effort to overcome "honest belief" doctrine where employee did "not question [the employer's] investigative process" nor raise any material factual dispute as to whether employer "reasonably and honestly believed" that employee violated rules).

### C. The Termination

Oakwood asserts that it terminated Reichard due to "unacceptable job performance" relating to the March 6th and March 14th Incidents.  Taken in the light most favorable to Reichard, there is evidence in the record that could suggest

---

[4]  It appears that there may be some dispute in the Sixth Circuit whether, and under what circumstances, an employer's proffered justification must be "unrelated" to an employee's exercise of FMLA rights in order for its honest belief in that justification to warrant summary judgment. *See Tillman v. Ohio Bell Tel Co.*, 545 Fed. App'x 340, 357-363 (6th Cir. 2013) (Rosen, D.J., concurring).  If and to the extent an "honest belief" must be unrelated to the employee's exercise of FMLA rights, Oakwood's honest belief that Reichard stayed late without permission satisfies that standard.  Reichard acknowledged that "most times" she stayed late related to emergency matters, not FMLA leave. (Reichard Dep. at 152, Pg. ID 142).

that (1) Williams and Hollis misinterpreted Reichard's "unfortunately" remark, and (2) the March 6th Incident therefore was not indicative of unacceptable job performance.[5]   However, Reichard has not shown that the March 14th Incident lacked a basis in fact.  To the contrary, Reichard candidly admits that she used her personal cellphone for nonbusiness reasons during work.  (*See* Reichard Dep. at 133, Pg. ID 141.)  Reichard also does not dispute that talking on her personal cell phone was (1) a violation of Oakwood's rules, and (2) an independent and sufficient reason for the Termination.

Even if Reichard had shown that Oakwood's proffered reasons for the Termination had no basis in fact (and she has not), Oakwood would still be entitled to summary judgment because it has demonstrated its honest belief in its justifications and that it made a reasonably informed and considered decision. Indeed, Hollis attached to the corrective action form (1) Williams' written statement regarding the March 6th Incident, and (2) the handwritten notes of Hollis' conversation with the patient who complained about the March 6th Incident.  Moreover, two Oakwood employees – Bontrager and James – conducted separate investigations and concluded that the Termination was warranted.  At oral

---

[5]   According to Hollis, Reichard maintained that she responded to the physician's question as to whether she was in the patient's room to perform an echo test by saying "unfortunately" because it was "unfortunate" that the test was being conducted late, "but not unfortunately that she was doing it period."  (ECF #23-2 at 64, Pg. ID 644.)  There is also evidence that the physician may not have interpreted Reichard's response as rude or negative.  (*See id.* at 66-67, Pg. ID 646-47.)

argument, Reichard argued that Oakwood's investigation into the March 6th Incident was insufficient because Bontrager and James did not speak with all of the relevant witnesses.  However, Oakwood's investigation need not be "optimal" nor "le[ave] no stone unturned."  *Smith*, 155 F.3d at 807.  The Court is satisfied that Oakwood honestly believed its justifications and made a reasonably informed and considered decision before terminating Reichard.

Indeed, Reichard has given the Court no reason to believe that Oakwood terminated her employment based upon some anti-FMLA animus rather than based upon its honest belief that she violated numerous employment rules.  Oakwood approved every request for FMLA leave that Reichard submitted.  Moreover, the evidence tends to show that Oakwood sought ways to accommodate Reichard, not ways to fire her.  In particular, it appears that Oakwood made several offers to push back Reichard's start time to enable her to care for herself and her mother.  (*See* ECF #18-25, Pg. ID 507; Hollis Dep. at 52, Pg. ID 154.)  Reichard apparently declined Oakwood's attempts at accommodation.  (*See id.*)  Moreover, there is no evidence that anyone affiliated with Oakwood – with the possible exception of a single stress technician who was not affected by Reichard's absences and who played no role in any decision by Oakwood to take any adverse action against Reichard (*see* Reichard Dep. at 152, Pg. ID 142) – ever complained about or opposed Reichard's absence from work for FMLA reasons.  Reichard has not

22

rebutted Oakwood's showing that it is entitled to summary judgment under the honest belief doctrine.

## <u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Oakwood's Motion for Summary Judgment (ECF #18) is **GRANTED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 21, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 21, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

23